IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:15cr43 |
| | ) | |
| IBRAHIM IBRAHIM ABDULLAH | ) | |

POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING FACTORS

In accordance with Section 6A1.2 of the *Sentencing Guidelines* and this Court's policy regarding guideline sentencing, the government hereby represents that it has reviewed the Probation Office's presentence report and that it does not dispute any of the factors or facts set out therein.

In order to evade federal cash reporting requirements, Ibrahim Abdullah structured more than $500,000 in cash deposits between May 2009 and March 2012. Around the same time, he transmitted hundreds of thousands of dollars overseas, and failed to file reports as required by law of the foreign financial accounts that he controlled. Abdullah asserts that the source of his cash deposits were payments that he received in connection with his rental of real estate to others, and that the purpose of his overseas transfers was to purchase more real estate in Egypt. While his assertions may be accurate, the investigators were unable to verify or disprove them. That inability is closely tied to the very nature of the transactions at issue.

Congress requires individuals to report their control of foreign bank accounts. 31 U.S.C. § 5314. Further, financial institutions are required to report cash transactions by their customers

of amounts greater than $10,000. 31 U.S.C. § 5313. Evasion of the reporting requirements is a serious crime - - and that is true regardless of whether the unreported money is "clean" or "dirty."

By "singl[ing] out transactions found to have the greatest potential" for "circumvent[ing] the enforcement of the laws of the United States," *California Bankers Ass'n v. Shultz*, 416 U.S. 21, 63 (1974), the cash reporting requirement provides the government with information that has a high degree of usefulness in a broad range of proceedings. See Pub.L. 107-56, Title III, § 371(a)(3), October 26, 2001, 115 Stat. 336, 337 (containing the Congressional finding that "the movement of large sums of cash is one of the most reliable warning signs of drug trafficking, terrorism, money laundering, racketeering, tax evasion, and similar crimes"). As a result, the harm to the government from reporting violations, though not always quantifiable, is considerable.

While it surely is possible that the funds that Abdullah structured were derived from lawful sources, the heartland of money structuring offenses consists of the structuring of funds that the government is unable to prove is anything but "clean." In essence, those are the very types of transactions that the structuring laws were designed to encompass. After all, a variety of criminal statutes apply to situations where defendants conduct transactions involving criminal proceeds, or intended to promote criminal offenses. *See, e.g.*, 18 U.S.C. §§ 1956 and 1957 (money laundering) and 2339C (terrorist financing). In contrast, however, a structuring offense does not require proof of any illegal source for the structured funds; nor does it require proof that the funds were intended for an unlawful purpose. The gravamen of the offense is simply the structuring of currency transactions to avoid the filing of a Currency Transaction Report.

The sentencing guidelines for money structuring offenses are stringent. In large part, that is because some sophisticated criminals structure cash transactions to disguise the origin or the destination of the proceeds of the most serious kinds of illegal activity. As a result, the government's failure in any particular case to discover an underlying unlawful activity may be the result of laundering activity that is successful, rather than the absence of an actual underlying offense. As Justice Kennedy observed:

> Because of the problems of individual proof, Congress found it necessary to enact a blanket punishment. See S.Rep. No. 99-130 . . . (former IRS agent found it "'unbelievably difficult'" to discern which money flows were legitimate and which were tied to crime). One of the few reliable warning signs of some serious crimes is the use of large sums of cash. . . . So Congress punished all cash smuggling or non-reporting . . . .

*United States v. Bajakajian*, 524 U.S. 321, 353-54 (1998) (Kennedy, J., dissenting).

Were the government able to prove that a defendant structured his money in the course of other violations, then he would be prosecuted for those other violations. But, by its very nature, money laundering makes other violations difficult to prove; after all, if the laundering succeeds, then the money appears to be "clean." Indeed, it is the difficulty of distinguishing successful money launderers from more ordinary citizens that underlie the stringent nature of the guidelines for structuring offenses.

At Section 2S1.3(b)(1), the structuring guidelines themselves provide an enhancement applicable to cases where the defendant knows that the money was derived from a criminal offense or intended for an unlawful purpose. In setting higher offense levels for financial transaction offenses (such as money laundering) that involve criminal proceeds, and in enhancing sentences for structuring that involve such funds, the Sentencing Commission signals that the

"heartland" of structuring offenses consists of transactions involving funds whose source and purpose are not known to involve other criminal activity. In short, money structuring is barred regardless of whether the money involved is "clean." because structuring can be a mark of money laundering - - and the heartland of structuring cases consists of situations in which the defendant is proved to have committed structuring but no other violation.

In determining the appropriate punishment in this case, this Court should recognize that a significant component of the punishment imposed in this case consists of the forfeiture of at least $200,000 that was ordered on May 20, 2015. In light of that forfeiture, the United States does not ask the Court to impose as part of the sentence in this case a fine other than the mandatory special assessment.

Respectfully submitted,

Dana J. Boente
United States Attorney

By: _____/s/_____
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2015, I electronically filed the foregoing Position of the United States with Respect to Sentencing Factors with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

> Todd M. Richman
> Assistant Federal Public Defender
> 1650 King Street, Suite 500
> Alexandria, Virginia 22314

> ___/s/_____
> Gordon D. Kromberg
> Assistant United States Attorney
> Virginia Bar No. 33676
> Assistant United States Attorney
> Attorney for the United States
> 2100 Jamieson Avenue
> Alexandria, VA  22314
> (703) 299-3700
> (703) 837.8242 (fax)
> gordon.kromberg@usdoj.gov